**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: Proceedings Before the Court of Common Pleas of Monroe County, Pa. to Determine Propriety of State Court Representation by Defender Association of Philadelphia, | CIVIL ACTION NO. 3:13-CV-511 (JUDGE CAPUTO) |

Filed In

COMMONWEALTH OF PENNSYLVANIA,

v.

MANUEL SEPULVEDA.

## MEMORANDUM

In Manuel Sepulveda's ("Mr. Sepulveda") pending Post Conviction Relief Act ("PCRA") proceeding challenging his conviction in the Court of Common Pleas of Monroe County, Pennsylvania, the PCRA court scheduled a hearing to determine whether the Federal Community Defender Organization, Eastern District of Pennsylvania (the "FCDO")[1] may or should lawfully continue to represent Mr. Sepulveda in his PCRA proceeding. Relying on the federal officer removal statute, 28 U.S.C. § 1442, Respondent Defender Association of Philadelphia removed the proceeding involving the hearing to this Court.[2]

---

[1]    The named movant Defender Association of Philadelphia's Federal Court Division is a Community Defender Organization within the meaning of 18 U.S.C. § 3006A(g)(2)(B). The Federal Court Division of the Defender Association of Philadelphia is often referred to as the FCDO. The FCDO is not a juridical entity, but rather is a subunit of the named movant, Respondent Defender Association of Philadelphia.

[2]    At least six other similarly situated proceedings have been removed to federal court. Three are pending in this District, *Commonwealth v. Housman*, No. 13-2103 (M.D. Pa.) (Caputo, J.); *Commonwealth v. Dick*, No. 13-561 (M.D. Pa.) (Caputo, J.); *Commonwealth v. Dowling*, No. 13-510 (M.D. Pa.) (Caputo, J.), and three are pending in the United States District Court for the Eastern District of Pennsylvania, *Commonwealth v. Johnson*, No. 13-2242 (E.D. Pa.) (Schiller, J.); *Commonwealth v. Mitchell*, No. 13-1871 (E.D. Pa.) (McLaughlin, J.);

Mr. Sepulveda's PCRA proceeding, however, has not been removed and remains in state court. Now before the Court are the Commonwealth's Motion to Remand (Doc. 9) and the Defender Association of Philadelphia's Motion to Dismiss (Doc. 8) the proceeding.

The underlying proceeding in this removed action seemingly implicates several issues of federal law involving the construction of federal statutes and the application of relevant federal decisional authority and legal principles. Nonetheless, I am of the view that the FCDO fails to satisfy its burden to establish the existence of federal jurisdiction under the federal officer removal statute. Specifically, because the "acting under" requirement for removal under 28 U.S.C. § 1442(a)(1) is not satisfied in this case, the Commonwealth's motion to remand this action to the Court of Common Pleas of Monroe County will be granted. And, since the Commonwealth's motion to remand will be granted, the FCDO's motion to dismiss will be denied as moot.

## I. Background

### A.      Relevant Factual Background

Manuel Sepulveda was convicted of two counts of first-degree murder and related counts, and sentenced to death on January 27, 2003, in the Court of Common Pleas of Monroe County, Pennsylvania. Mr. Sepulveda's convictions and sentence of death were affirmed by the Pennsylvania Supreme Court on August 19, 2004. Mr. Sepulveda's petition for certiorari review was denied on February 21, 2006.

Thereafter, Mr. Sepulveda filed a motion in this Court for leave to proceed *in forma pauperis* and appointment of federal habeas corpus counsel. *See Sepulveda v. Beard, et al.*, No. 06-cv-0731, (M.D. Pa. Apr. 7, 2006). On that same day, Mr. Sepulveda's request to proceed *in forma pauperis* was granted, and the Capital Habeas Unit of the Federal Public Defender Office for the Middle District of Pennsylvania and the FCDO were

---

*Commonwealth v. Harris*, No. 13-062 (E.D. Pa.) (Rufe, J.).

2

appointed as co-counsel for Mr. Sepulveda's to-be-filed habeas corpus petition.

On June 7, 2006, after the Governor of Pennsylvania signed a warrant scheduling execution for July 27, 2006, Mr. Sepulveda petitioned this Court for a stay of execution, which was granted on June 14, 2006.

Thereafter, on August 16, 2006, the FCDO, in the person of then-FCDO lawyer Michael Wiseman, entered its appearance for Mr. Sepulveda in the Court of Common Pleas on the homicide case.

Following a series of Orders on his applications for extensions of time, Mr. Sepulveda filed a timely petition for habeas corpus relief in this Court on December 4, 2006. On December 6, 2006, on Mr. Sepulveda's unopposed motion, the federal habeas corpus proceedings were stayed pending exhaustion of state remedies.

On January 2, 2007, Mr. Sepulveda filed an amended PCRA petition. After holding an evidentiary hearing, the PCRA court denied Mr. Sepulveda's petition on October 11, 2007. Mr. Sepulveda appealed to the Pennsylvania Supreme Court.

On November 28, 2012, the Pennsylvania Supreme Court issued an Opinion holding that Mr. Sepulveda's trial "counsel's performance related to the development and presentation of mitigating evidence was constitutionally deficient." *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1130 (Pa. 2012). Thus, the Pennsylvania Supreme Court remanded to the PCRA court for the limited purpose of determining whether counsel's deficient performance prejudiced Mr. Sepulveda. *See id*. at 1131. The Pennsylvania Supreme Court concluded its opinion by addressing the FCDO's appearance as counsel in the PCRA proceeding:

> [T]he FCDO simply entered its appearance in this case to represent appellant in his state postconviction challenge. The FCDO filed a petition for a writ of habeas corpus on appellant's behalf in the U.S. District Court for the Middle District of Pennsylvania on December 4, 2006. The PCRA court notes in its opinion that federal counsel were appointed by a federal district court judge to file a federal habeas corpus petition; instead, the FCDO proceeded to

Pennsylvania state court. The federal proceedings have been stayed pending resolution of appellant's PCRA claims.

Appellant is represented by three FCDO lawyers: Michael Wiseman, Esquire, Keisha Hudson, Esquire, and Elizabeth Larin, Esquire. Attorney Wiseman is lead counsel and he signed the brief. Recently, in another capital matter, *Commonwealth v. Abdul–Salaam*, 42 A.3d 983 (Pa. 2012), the FCDO withdrew its appearance and advised that Attorney Wiseman, lead counsel there too, would be representing Abdul–Salaam on a pro bono basis, listing a private address for Wiseman. No such notice has been entered here. It is unclear whether Attorney Wiseman remains a member of the FCDO for some cases, while acting as " pro bono " counsel in other cases. If federal funds were used to litigate the PCRA below- and the number of FCDO lawyers and witnesses involved, and the extent of the pleadings, suggest the undertaking was managed with federal funds- the participation of the FCDO in the case may well be unauthorized by federal court order or federal law. Accordingly, on remand, the PCRA court is directed to determine whether to formally appoint appropriate post-conviction counsel and to consider whether the FCDO may or should lawfully represent appellant in this state capital PCRA proceeding. *See* 18 U.S.C. § 3599(a)(2) (authorizing appointment of counsel to indigent state defendants actively pursuing federal habeas corpus relief from death sentence).

*Id*. at 1151.

**B.    *Commonwealth v. Mitchell***

Less than two months after it rendered its decision in *Sepulveda*, 55 A.3d 1108, the Pennsylvania Supreme Court, on January 10, 2013, issued a per curiam order in the PCRA case of *Commonwealth v. Mitchell*, No. 617 CAP (the "*Mitchell* Order"). Upon consideration of the Commonwealth's motion to remove counsel in *Mitchell*, the Pennsylvania Supreme Court remanded to the PCRA court to "determine whether current counsel, the Federal Community Defender Organization ("FCDO") may represent appellant in this state capital PCRA proceeding; or whether other appropriate post-conviction counsel should be appointed." *Id*. To resolve that issue, the Pennsylvania Supreme Court provided the following guidance:

[T]he PCRA court must first determine whether the FCDO used any federal grant monies to support its activities in state court in this case. If the FCDO cannot demonstrate that its actions here were all privately financed, and convincingly attest that this will remain the case going forward, it is to be removed. If the PCRA court determines that the actions were privately financed, it should then determine "after a colloquy on the record, that the defendant has engaged counsel who has entered, or will promptly enter, an

4

> appearance for the collateral review proceedings." <u>See</u> Pa. R. Crim. P. 904(H)(1)(c). We note that the order of appointment produced by the FCDO, issued by the U.S. District Court for the Eastern District of Pennsylvania at No. 2:11-cv-02063-MAM, and dated April 15, 2011, appointed the FCDO to represent appellant only for purposes of litigating his civil federal *habeas corpus* action, and the authority of the FCDO to participate in this state collateral proceeding is not clear. <u>See</u> 18 U.S.C. § 3599(a)(2) (authorizing appointment of counsel to indigent state defendants actively pursuing federal *habeas corpus* relief from death sentence).

*Id*.

Justice Todd, joined by Justice Baer, filed a dissenting statement, noting that the court directed "the removal of counsel without any stated analysis of the issues involved, issues which require the construction of federal statutes and other authority, consideration of the relationship between federal and state court systems in capital litigation, and consideration of counsel's role therein." *Commonwealth v. Mitchell*, No. 617 CAP (Todd, J., dissenting).

## C.    The Disqualification Hearing Order

In view of the Pennsylvania Supreme Court's remand instructions, the PCRA court, on February 4, 2013, scheduled a hearing for March 1, 2013 "for the sole purpose of addressing the Supreme Court's mandate directing this Court 'to determine whether to formally appoint appropriate post-conviction counsel and to consider whether the FCDO may or should lawfully represent appellant in this state capital PCRA proceeding.'" (Doc. 1, Ex. C.)

## D.    The Notice of Removal

The FCDO, on February 21, 2013, removed the proceeding (the "Disqualification Proceeding") relating to the judicial determination of whether the FCDO may lawfully represent Mr. Sepulveda in his PCRA action pursuant to 28 U.S.C. § 1442. (Doc. 1.) The FCDO did not remove the underlying action in which Mr. Sepulveda is challenging his conviction under the PCRA, and that action remains in state court. (*Id*. at ¶ 6.) The Notice of Removal asserts that the Disqualification Proceeding is properly removed to this Court

because "it is directed against a person, *i.e.*, the FCDO, acting under an officer or agency of the United States, for or relating to the FCDO's acts 'under color of such office,' 28 U.S.C. § 1442(a)(1), and is a proceeding that seeks a judicial order, 28 U.S.C. § 1442(c)." (*Id.* at ¶ 19.)

The FCDO also argues that a number of colorable federal defenses will be raised in opposition to the Disqualification Proceeding. These defenses include, among others: (1) preemption; (2) primary jurisdiction; and (3) that the Disqualification Proceeding seeks to deprive the FCDO and its lawyers of their First Amendment rights and their equal protections rights under the Fourteenth Amendment. The FCDO further maintains that the Commonwealth's position is predicated on an incorrect interpretation of federal law. (*Id.* at ¶¶ 29-44.)

### E.    The FCDO's Motion to Dismiss and the Commonwealth's Motion to Remand

Following the removal of the proceeding concerning the FCDO's representation of Mr. Sepulveda, the FCDO filed a motion to dismiss the proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8.) The FCDO asserts that the Disqualification Proceeding fails to state a claim on which relief can be granted because sole responsibility for the enforcement of the funding provisions on which the Commonwealth relies, 18 U.S.C. § 3006A and 18 U.S.C. § 3599, lies with the Administrative Office of the United States Courts ("AO"). Thus, the FCDO contends that the federal statutes the Commonwealth seeks to enforce do not endow any non-federal entity with a right of action. However, to the extent that the Commonwealth is not barred from proceeding under these statutes, the FCDO requests that the action be stayed and referred to the AO under the doctrine of primary jurisdiction.

On March 25, 2013, the Commonwealth filed a motion to remand this proceeding to the Court of Common Pleas of Monroe County. (Doc. 9.) The Commonwealth argues that

remand is necessitated in this case because the FCDO is unable to establish that it "act[s] under" a federal officer or agency as required by 28 U.S.C. § 1442(a)(1) and that the Disqualification Proceeding does not qualify as a "civil proceeding" as defined by § 1442(d)(1). Additionally, the Commonwealth asserts that *Younger* abstention prohibits removal of the instant proceeding.

After the time to brief the motions expired, oral argument was held on both motions on June 19, 2013. The motions are thus ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 1447(c), a party may bring a motion to remand an action removed from state to federal court. The general removal statute, 28 U.S.C. § 1441, is to be strictly construed in favor of state court adjudication. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985); *see also In re Asbestos Prods. Liab. Litig. (No. IV)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) ("the presumption under the general removal statute favors remand [ ] due to the limited jurisdiction of federal courts"). Conversely, 28 U.S.C. § 1442, the federal officer removal statute upon which removal was based in this proceeding, is to be broadly construed in favor of a federal forum. *See Sun Buick v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *see also In re Asbestos*, 770 F. Supp. 2d at 741 ("the presumption under the federal officer removal statute favors removal [ ] for the benefit of the federal officer involved the case"). This is so because "'one of the primary purposes for the federal officer removal statute- as its history clearly demonstrates- was to have federal defenses litigated in the federal courts.'" *Calhoun v. Murray*, 507 F. App'x 251, 260 (3d Cir. 2012) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)). "As with removal petitions based on other statutes, the burden of establishing the propriety of removal and the existence of federal jurisdiction under section 1442(a)(1) is upon the removing party." *N.J. Dep't of Envtl. Prot. v. Dixo Co.*, No. 06-1041, 2006 WL

2716092, at *2 (D.N.J. Sept. 22, 2006); *In re Asbestos Litig.*, 661 F. Supp. 2d 451, 453 (D. Del. 2009) (same); *see also Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) ("party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists"). But the Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981) (citation omitted).

### III. Discussion

As noted, before the Court are the FCDO's motion to dismiss and the Commonwealth's motion to remand. Because the motion to remand raises an issue of jurisdiction, the Commonwealth's motion will be addressed first.

The federal officer removal statute, 28 U.S.C. § 1442, provides, in pertinent part:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. . . .

28 U.S.C. § 1442(a)(1) (2013). A "civil action" is defined by the federal officer removal statute to include:

any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

*Id.* at § 1442(d)(1).[3]

According to the United States Court of Appeals for the Third Circuit, jurisdiction under § 1442(a)(1) requires that:

> a defendant . . . must establish that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S. Ct. 959, 965, 103 L. Ed. 2d 99 (1989); *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S. Ct. 1813, 1817, 23 L. Ed. 2d 396 (1969)).

**A.     "Person" Within the Meaning of Section 1442; Colorable Federal Defense; and Causal Nexus**

Section 1442 does not define the term "person." *See generally* 28 U.S.C. § 1442. Courts in the Third Circuit have routinely recognized that corporate entities qualify as persons under the federal officer removal statute. *See, e.g., Lewis v. Asbestos Corp., Ltd.*, No. 10-650, 2012 WL 3240941, at *4 (D.N.J. Aug. 7, 2012); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010); *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, No. 04-1969, 2008 WL 936925, at *5 (E.D. Pa. Apr. 2, 2008). The vast majority of other federal courts have reached the same conclusion. *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (section 1442's text covers "non-natural entities, such as the United States and its agencies, which suggests that interpreting 'person' to include corporations is consistent with the statutory scheme."); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) ("corporate entities qualify as "persons" under § 1442(a)(1)"); *Glein v. Boeing Co.*, No. 10-

---

[3]     Prior to the 2013 amendments to § 1442, the definition of a "civil action" in the federal officer removal statute was set forth in subsection (c). *See* 28 U.S.C. § 1442 (2011), *amended by* 28 U.S.C. § 1442 (2013).

452, 2010 WL 2608284, at *2 (S.D.Ill. June 25, 2010); *McGee v. Arkel Int'l, LLC*, 716 F. Supp. 2d 572, 575 (S.D. Tex. 2009).  Applying this reasoning, the FCDO qualifies as a "person" under the federal officer removal statute.

      *Feidt* also requires the removing party to raise a colorable federal defense.  "The question before the court on this prong is 'not whether [a] claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.'" *N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 403 (D.N. J. 2005) (quoting *Fung v. Abex Corp.*, 816 F. Supp. 569, 573 (N.D. Cal. 1992)).

      The Supreme Court made clear in *Mesa v. California*, 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989) that the assertion of a colorable federal defense is essential to removal jurisdiction under § 1442(a)(1). *See id*. at 139, 109 S. Ct. 959 ("Federal officer removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense.").  "But while *Mesa* affirmatively settled that Section 1442(a)(1) requires a colorable federal defense to effect removal under the statute, it did not clarify what defenses qualify as such." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010). The Supreme Court has, however, explained:

> The federal officer removal statute is not 'narrow' or 'limited.'  At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.  One of the primary purposes of the removal statute- as its history clearly demonstrates- was to have such defenses litigated in the federal courts.

*Willingham v. Morgan*, 395 U.S. 402, 406-07, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969).  As a result, an "officer need not win his case before he can have it removed." *Id*. at 407, 89 S.Ct. 1813.

      The Commonwealth has not addressed in detail the colorable federal defense requirement in its submission.  Thus, I will assume that the FCDO satisfies this requirement.

      *Feidt* further requires a causal nexus between the claims and the conduct performed

under color of a federal office. "[A] defendant seeking removal must 'by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty.'" *Hagen*, 739 F. Supp. 2d at 785 (quoting *Mesa*, 489 U.S. at 132, 109 S. Ct. 959). This inquiry is distinct from the "acting under" requirement under the federal officer removal statute. *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 635 (D. Del. 2008); *see also Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (color of federal authority requirement is distinct from the "acting under" requirement). However, some courts have noted that these considerations "'tend to collapse into a single requirement.'" *Parlin*, 579 F. Supp. 2d at 635 (quoting *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008)).

As with the colorable federal defense consideration, the Commonwealth's submission provides little argument with respect to whether the FCDO satisfies the causal nexus requirement. As such, I will assume this requirement is met. Nevertheless, although these three *Feidt* requirements are met, the FCDO must also establish that is "act[s] under" a federal officer in order to invoke removal jurisdiction under § 1442(a)(1).

## B.    "Acting Under" a Federal Officer

The focal point of the Commonwealth's motion to remand is the second *Feidt* inquiry. To remove the Disqualification Proceeding under the federal officer removal statute, the FCDO must show that it was "acting under" a federal officer. *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008). "The words 'acting under' are broad, and . . . the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007) (citing *Colorado v. Symes*, 286 U.S. 510, 517, 52 S. Ct. 635, 76 L. Ed. 2d 1253 (1932)). "There is no precise standard for the requisite control to bring an entity within the 'acting under' clause, but the determination is dependent upon the facts and conduct giving rise to the alleged cause of action." *Scrogin v. Rolls-Royce Corp.*, No. 3:10cv442, 2010 WL 3547706, at *4 (D. Conn. Aug. 16, 2010) (citing *In re Methyl*

11

*Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 125 (2d Cir. 2007)).  But the Supreme Court has stated to satisfy the "acting under" requirement of § 1442(a)(1), a private person's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152, 127 S.Ct. 2301.

In the Notice of Removal, the FCDO asserts that is assists the Government in "providing representation to indigent defendants, a service that the Government itself would have to perform under the CJA." (Doc. 1, ¶ 27.)  Essentially, the FCDO argues that as a federal grantee/contractor pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, it "act[s] under" the AO.[4]

The Commonwealth, however, citing the Supreme Court's decision in *Watson*, argues that the FCDO is unable to satisfy the federal officer removal statute because "no federal agency is obligated to appear in state court and the instant Motion to Appoint Counsel concerns FCDO's appearances in state court rather than its appearances in federal court." (Doc. 23, 19.)  Thus, the Commonwealth insists that the FCDO is not helping the Federal Government produce an item it needs when the FCDO represents indigent criminal defendants in state court.

The FCDO's contention that it "act[s] under" the AO for purposes of the federal officer removal statute requires consideration of the Criminal Justice Act and an understanding of the relationship between Community Defender Organizations and the AO.  Moreover, as the Commonwealth asserts that the resolution of the FCDO's private contractor argument is controlled by *Watson v. Philip Morris Cos.*, 551 U.S. 142, 146, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007), a discussion of that decision follows as well.

   **1.    The Criminal Justice Act and the Relationship Between Community Defender Organizations and the Administrative Office of the United States Courts**

The Criminal Justice Act authorizes the appointment of counsel for financially eligible

----

[4]      The FCDO does not allege that it is a federal agency under § 1442. (Doc. 29, 11-13.)

individuals seeking habeas corpus relief under 18 U.S.C. §§ 2241, 2254, and 2255 whenever "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).  In post conviction proceedings under § 2254 or § 2555 to vacate or set aside a death sentence, "any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys . . . ." 18 U.S.C. § 3599(a)(2).

Section 3599(e) provides:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

*Id*. at § 3599(e).[5]

---

[5]       In *Harbison v. Bell*, 556 U.S. 180, 182-83, 129 S. Ct. 1481, 173 L. Ed. 2d 347 (2009), the Court addressed "whether § 3599(e)'s reference to 'proceedings for executive or other clemency as may be available to the defendant' encompasses state clemency proceedings."  In finding that § 3599(e) authorizes federally appointed counsel to represent clients in such proceedings, the Court considered the text of § 3599(e) and noted that "[i]t is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation, not a strict division between federal and state proceedings." *Id*. at 188, 129 S. Ct. 1481.  The Court also indicated that the Government's concern that § 3599(e) as interpreted by the Court that federally funded counsel would need to represent petitioners in any state habeas proceeding occurring after appointment of counsel to be unfounded because state habeas is not a stage "subsequent" to federal habeas. *See id*. at 189, 129 S. Ct. 1481.  Thus, even though "state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id*. at 190, 129 S. Ct. 1481.  Nevertheless, in light of § 3599(e)'s provision that counsel may represent clients in "other appropriate motions and procedures," the Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." *Id*. at 190 n.7, 129 S. Ct. 1481.

Under the Criminal Justice Act, federal district courts must place in operation a plan for furnishing representation to indigent criminal defendants. *See* 18 U.S.C. § 3006A(a). A district in which at least two hundred persons annually require the appointment of counsel may establish a "Federal Public Defender Organization," a "Community Defender Organization," or both. *See id.* at § 3006A(g)(1).

The Criminal Justice Act Plan for the United States District Court for the Middle District of Pennsylvania provides that "the federal public defender organization of the Middle District of Pennsylvania, previously established in this district pursuant to the provisions of the CJA, is hereby recognized as the federal public defender organization for this district." In death penalty proceedings under § 2254 and § 2255, the Middle District Plan permits the appointment of counsel from a number of sources, including the Defender Association of Philadelphia's Capital Habeas Unit, *i.e.*, the FCDO.

The Plan of the United States District Court for the Eastern District of Pennsylvania Pursuant to the Criminal Justice Act of 1964, as amended, designates the FCDO as the Community Defender Organization to "facilitate the representation of persons entitled to appointment of counsel under the Criminal Justice Act."

A "Community Defender Organization" under the Criminal Justice Act is defined as "a nonprofit defense counsel service established and administered by any group authorized by the plan to provide representation." 18 U.S.C. § 3006A(g)(2)(B).[6] Community Defender Organizations "shall submit to the Judicial Conference of the United States an annual report setting forth its activities and financial position and the anticipated caseload and expenses

---

[6] The FCDO, as explained above, is a division within the Defender Association of Philadelphia, which is a non-profit organization that provides legal representation to indigent criminal defendants in federal and state courts. (Doc. 17, 4.) The FCDO's activities are supported by a combination of federal funds received under the Criminal Justice Act and private charitable contributions. (*Id.*)

for the next fiscal year." *Id*.  Community Defender Organizations may apply for approval from the Judicial Conference to receive an initial grant to establish the organization and in lieu of payments for representation and services under subsections (d) and (e) of § 3006A, Community Defender Organizations may "receive periodic sustaining grants to provide representation and other expenses pursuant to this section." *Id*.  The Judicial Conference is also tasked with issuing rules and regulations for governance of plans established under § 3006A. *See id*. at § 3006A(h).  Appropriations under the Criminal Justice Act "shall be made under the supervision of the Director of the Administrative Office of the United States Courts." *Id*. at § 3006A(i).

The AO, acting under the supervision and direction of the Judicial Conference, "administers the federal defender and attorney program on a national basis; is responsible for training related to furnishing representation under the CJA; and provides legal, policy, management, and fiscal advice to the Conference and its . . . defenders and their staffs." United States Courts, http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel.aspx (last visited July 22, 2013).

Community Defender Organizations seeking grant funds must apply on a form prepared by the AO. *See* 7 Guide to Judiciary Policy: Defender Services, pt. A, § 420, available at http://www.uscourts.gov/uscourts/FederalCourts/AppointmentOfCounsel/-vol7/Vol_07.pdf (last visited July 22, 2013).  The receipt and use of funds is subject to certain conditions, and Community Defender Organizations must agree to and accept these conditions before grant payments are issued. *See id*.  Among others, the terms and conditions include that: "grant funds will be maintained separately and will not be commingled with any non-grant funds maintained by grantee;" "the grantee must submit reports each year setting forth its activities and financial position and the anticipated caseload and expense for the next fiscal year;" and "the grantee must keep financial books

. . . unless a wavier is granted by the AO [and] such records must be maintained and submitted in such manner and form as required by the AO." *Id*. at Appx. 4A, available at http://www.uscourts.gov/uscourts/FederalCourts/AppointmentOfCounsel/vol7/Vol07A-Ch 04-Appx4A.pdf (last visited July 22, 2013). If a grantee fails to comply with the terms and conditions of its grant award, the Judicial Conference or its authorized representative "may reduce, suspend, or terminate, or disallow payments under th[e] grant award as it deems appropriate." *Id*.

Based on these guidelines and regulations, the FCDO asserts that it operates under congressional authorization and is subject to federal control. (Doc. 1, ¶ 26.) The FCDO thus concludes that it "act[s] under" a federal officer and/or agency for purposes of the federal officer removal statute. The Commonwealth, however, contends that this showing fails to satisfy the "acting under" analysis set forth by the Supreme Court in *Watson*.

### 2. *Watson v. Philip Morris Cos.*

The Supreme Court addressed the "acting under" requirement in the context of the federal officer removal statute in *Watson v. Philip Morris Cos.*, 551 U.S. 142, 146, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007). The Commonwealth argues that the Supreme Court's decision in *Watson* provides the framework for the "acting under" inquiry for the federal officer removal statute, and, pursuant to *Watson*, remand of the Disqualification Proceeding is compelled in this action. For the reasons detailed below, I agree with the Commonwealth in both respects.

In *Watson*, the petitioners filed a civil action in state court claiming that the respondents, the Philip Morris Companies, violated state laws prohibiting unfair and deceptive business practices by advertising certain cigarette brands as "light" when, in fact, the respondents manipulated testing results by designing its cigarettes and employing techniques that caused the cigarettes to register lower levels of tar and nicotine than would

actually be delivered to consumers. *See Watson*, 551 U.S. at 146, 127 S. Ct. 2301. Relying on the federal officer removal statute, the respondents removed the action to federal court. *See id*. The district court held that the statute authorized removal because the petitioner's complaint attacked the respondents' use of the Government's method of testing cigarettes and thus the action involved conduct by the respondents that was taken under the Federal Trade Commission ("FTC"). *See id*.

The district court certified the question for interlocutory review, and the United States Court of Appeals for the Eighth Circuit affirmed. *See id*. at 147, 127 S. Ct. 2301. As with the district court, the Eighth Circuit found significant the FTC's detailed supervision of the cigarette testing process. *See id*. The Supreme Court granted certiorari to address the question "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the italicized language ("*acting under*" an "*officer*" of the United States) and thereby permits removal." *Id*. at 145, 127 S. Ct. 2301 (emphasis in original).[7]

While recognizing the words "acting under" are broad, the Court emphasized that "broad language is not limitless." *Id*. at 148, 127 S. Ct. 2301. The Court thus considered the statute's language, context, history, and purpose to determine the scope and breadth of § 1442(a)(1). *See id*. After considering the history of the statute, the Court noted that early Supreme Court precedent "illustrate[s] that the removal statute's basic purpose is to protect the Federal Government from interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within

---

[7]     Section 1442(a)(1) as construed by the Supreme Court in *Watson* has since undergone minor amendments. *See* 28 U.S.C. § 1442(a)(1) (1996), *amended by* 28 U.S.C. § 1442(a)(1) (2011). Section 1442(a)(1) continues to require a private person to be "acting under" a federal officer as set forth in *Watson*.

the scope of their authority." *Id*. at 150, 127 S. Ct. 2301 (internal quotations, citations, and alterations omitted). Significantly, state courts may display "local prejudice" against unpopular federal officials or federal laws, States may impede the enforcement of federal law, or States may deprive federal officials of a federal forum in which to assert federal immunity defenses. *See id*. These concerns can also arise when private persons act as assistants to federal officers carrying out the performance of their official duties. *See id*.

Against that historical backdrop, the *Watson* Court analyzed the phrase "acting under" as used in § 1442(a)(1), and found use of the word "under" "refer[red] to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Id*. at 151, 127 S. Ct. 2301 (quoting 18 Oxford English Dictionary 948 (2d ed. 1989)). Such a relationship often involves subjection, guidance, or control. *See id*. (citing Webster's New International Dictionary 2765 (2d ed. 1953)). Moreover, the Supreme Court found that its precedent and the statute's purpose confirmed that a private person's "acting under" "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id*. at 152, 127 S. Ct. 2301 (citing *Davis v. South Carolina*, 107 U.S. 597, 600, 2 S. Ct. 636, 27 L. Ed. 574 (1883)). The Court emphasized that mere compliance (or noncompliance) with federal laws, rules and regulations does not bring a private actor within the scope of the federal officer removal statute even if "the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id*. at 152-53, 127 S. Ct. 2301.

The *Watson* Court next considered the respondents' argument that "lower courts have held that Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Id*. The respondents thus questioned why if a private contractor can act under a federal officer

based on close supervision, would the result not be the same when a private party is subject to intense regulation. *See id*. The Supreme Court explained:

> The answer to this question lies in the fact that the private contractor [in cases where close supervision by a federal officer or agency is sufficient] is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. In the context of *Winters*, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war. Moreover, at least arguably, Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.

*Id*. at 153-54, 127 S. Ct. 2301 (referring to *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)). The Court found this examination sufficiently addressed the respondent's argument in light of the fact that private contracting was not at issue in the case.

Lastly, the respondents in *Watson* asserted that its activities exceeded the mere compliance with regulations because the FTC, after initially testing cigarettes for tar and nicotine, delegated that authority to an industry-financed testing laboratory. *See id*. at 154, 127 S. Ct. 2301. The Court rejected the respondents' argument because it "found no evidence of any delegation of legal authority from the FTC to the industry association to undertake testing on the Government agency's behalf. Nor is there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement." *Id*. at 156, 127 S. Ct. 2301. And, without evidence of a special relationship, the Court found the respondents' analogy to Government contracting flawed because it was left with only detailed rules, which sounded as regulation, and not delegation of authority. *See id*. at 157, 127 S. Ct. 2301.

### 3.    Analysis of the "Acting Under" Requirement

Citing § 3006A, § 3599, and *Watson*, the Commonwealth insists that the FCDO fails to satisfy its burden as the removing party in establishing the existence of federal jurisdiction

19

under § 1442(a)(1). According to the Commonwealth, the FCDO's private contractor argument makes little sense because when the FCDO "appears in state court proceedings before federal habeas review it is not assisting or helping carry out the duties of its federal superior," (Doc. 23, 9), since no federal agency has "a duty to appoint legal representation to criminal defendants in state court." (*Id*. at 19.) Without such an obligation to appoint counsel or appear in state post-conviction proceedings, the Commonwealth concludes that the FCDO cannot satisfy the federal officer removal statute because it is not helping the Government produce something it needs.

The FCDO, however, asserts that it adequately alleges that it "act[s] under" the AO as a federal grantee/contractor. In that regard, "[a]s a community defender organization, the FCDO assists the Government to implement the aims and purposes of the CJA, by representing indigent defendants." (Doc. 28, 16.) The FCDO suggests that it satisfies the federal officer removal statute because it "operates under congressional authorization and is therefore subject to federal guidelines and regulations." (*Id* at 17; *see also* Doc. 1, ¶ 27 ("The receipt and use of grant funds are subject to conditions set forth in Appx 4A of the Guidelines . . . . [T]he FCDO is subject to federal control.").) The FCDO also criticizes the Commonwealth's construction of the federal officer removal statute. It maintains that the Commonwealth's arguments in support of remand are hinged to the merits of the underlying controversy, and, at this point in the proceeding, it would be improper to decide the merits of the case. (Doc. 28,19-21.)

In view of the above cited authority and upon consideration of the arguments of the parties, the FCDO fails to satisfy its burden and demonstrate the existence of federal jurisdiction under § 1442(a)(1). In *Watson*, the Supreme Court explained that a "private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 55 U.S. at 152, 127 S. Ct. 2301. In essence, the

Court held that helping carry out or assisting with a governmental task or duty is a necessary condition for a private entity to be considered "acting under" a federal officer or agency for purposes of § 1442(a)(1). The FCDO asserts that it assists the Government by representing indigent defendants, which it suggests is bolstered by the fact that the Guidelines for Administering the Criminal Justice Act and Related Statutes require that a Community Defender Organization's "stated purposes must include implementation of the aims and purposes of the CJA." However, the FCDO has not identified any federal agency or officer that is tasked with or has a duty to appoint, arrange, or provide legal representation for indigent capital criminal defendants in *state post-conviction proceedings* to preserve claims for federal habeas review. A necessary condition to invoke the federal officer removal statute, the assistance or carrying out of duties of a federal superior, is therefore absent in this case.[8] As a result, even if the FCDO is "acting under" a federal officer in the course of its representation of clients in federal court, it does not follow that it also "act[s] under" a federal officer in its performance of tasks for which the Government bears no responsibility, such as appearing in state post-conviction capital proceedings to exhaust claims for federal habeas review. Indeed, "[c]ritical under the statute is to what extent defendants acted under federal direction *at the time they were engaged in the conduct now being sued upon.*" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488

---

[8]    For this reason, and in light of the fact that they pre-date *Watson*, the district court cases relied on by the FCDO as supporting its claim that it "act[s] under" the AO are not persuasive. *See, e.g., Dixon v. Ga. Indigent Legal Servs., Inc.*, 388 F. Supp. 1156 (S.D. Ga. 1974) (finding that "attorneys employed by organizations conducting federally-funded legal assistance programs for the indigent act under officers of the United States within the meaning of the removal statute[.]"); *Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp.*, 358 F. Supp. 841 (S.D.N.Y. 1973) ("In light of the foregoing description of the relationship between [the Office of Economic Opportunity] and its legal service programs, I conclude that the defendants in the instant actions are persons 'acting under' a federal officer within the meaning of § 1442(a)(1).").

F.3d 112, 125 (2d Cir. 2007) (emphasis added) (noting that the "acting under" and causal connection considerations tend to collapse into a single requirement and stating that "removal will not be proper where a private party establishes only that the acts complained of were performed under the 'general auspices' of a federal officer."); *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 635 (D. Del. 2008). As a corollary, if the FCDO's status as a federal grantee alone authorizes removal under § 1442(a)(1), numerous other entities and organizations that receive federal grants would also fall within the purview of the federal officer removal statute. Allowing these entities to remove proceedings to federal court simply because they receive grant funds subject to federal conditions and regulations without also finding that the entities are assisting or carrying out duties of the Federal Government would be inconsistent with the *Watson* Court's construction of § 1442(a)(1).

Moreover, the FCDO's argument that it satisfies the "acting under" requirement of § 1442(a)(1) as a federal contractor/grantee because it operates "under congressional authorization" and is "subject to federal guidelines and regulations," (Doc. 28, 17), is similar to the position advanced by the Philip Morris Companies and rejected by the Supreme Court in *Watson*. As the Supreme Court noted, intense regulation alone is insufficient to turn a private contractor into a private firm "acting under" a federal officer or agency. *See Watson*, 551 U.S. at 153, 127 S. Ct. 2301 ("a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone."). The *Watson* Court noted a crucial distinction between cases where a contractor and the Government are in an unusually close relationship "involving detailed regulation, monitoring, and supervision," and those instances where a company is simply subject to "intense regulation." *Id*. In the former, the private contractor assists the Government by providing an "item that it needs," which, in the contractor's absence, the Government itself would have to produce. *Id*.

The FCDO and the Government are not in such a relationship that render it "acting

under" a federal officer for purposes of the federal officer removal statute. Among other things, the FCDO is required to segregate grant funds, submit reports detailing its financial activities, and keep financial books under the terms of its funding grant. But, these requirements sound in regulation. And being subject to intense regulation alone does not entitle a private entity to remove an action under § 1442(a)(1). *See Watson*, 551 U.S. at 153.

Furthermore, the FCDO's submissions nor its arguments demonstrate that it is in such an unusually close relationship with the AO or the Federal Government to make the federal officer removal statute applicable to this proceeding. The FCDO, as discussed, is subject to guidelines and regulations including the terms of its funding grant. But the FCDO has not suggested that its representation of clients is performed at the direction of the AO, that the AO dictates its litigation strategies or legal theories in individual cases, that the AO reviews its work product, or that the AO otherwise takes an active role in monitoring and/or participating in client representation. Of course, a third-party cannot dictate the FCDO's legal representation of its clients. *See, e.g., Polk Cnty. v. Dodson*, 454 U.S. 312, 318-22, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) ("a defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior," and a lawyer shall not permit a person "who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.");[9] *see also Ferri v. Ackerman*, 444 U.S. 193, 204, 100 S. Ct. 402, 62 L. Ed. 2d 355 (1979) ("indispensable element of the effective performance of [appointed counsel's]

---

[9]     In *Dodson*, the issue before the Court was "whether a public defender acts 'under color of state law' when representing an indigent defendant in a state criminal proceeding." *Dodson*, 454 U.S. at 314, 102 S. Ct. 445. Significantly, the Court held that a public defender does not act under color of state law when performing "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id*. at 325, 102 S. Ct. 445.

responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation."). Nonetheless, it is this lack of monitoring or close supervision that distinguishes the relationship between the FCDO and the AO from cases that have found an unusually close relationship between a private contractor and a federal officer or agency for purposes of § 1442(a)(1). For example, in *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010) the United States Court of Appeals for the Sixth Circuit concluded that a private mold remediation firm was "acting under" the Federal Aviation Administration because it "helped FAA officers carry out their task of ridding a federal employee occupied building of an allegedly hazardous contaminant, a job that in the absence of a contract with MIS or another private mold remediation firm the FAA itself would have had to perform." *Id.* (citation, internal quotation, and alterations omitted). In finding the private contractor and the FAA in an unusually close relationship, the Sixth Circuit emphasized that the FAA contracts included precise specifications and required the contractor to follow explicit parameters, the contractor's work was closely monitored by federal officers, the FAA contracting officers had authority to require that the contractor dismiss incompetent employees, and the FAA controlled the working hours of the contractor's employees. *See id.* at 1087.

Here, in comparison, for the reasons detailed above, the FCDO is not providing a service the Government "needs" when it represents criminal defendants in state post-conviction proceedings prior to federal habeas review. Nor in the absence of the FCDO would the Government be obligated to provide representation itself in such circumstances. Accordingly, there is no unusually close relationship between the FCDO and the Federal Government, and removal of the Disqualification Proceeding was improper.

Lastly, the FCDO suggests that conducting such an analysis at this stage of the proceeding is premature. Specifically, it contends that finding that no federal officer or

agency is required to appoint counsel for indigent capital criminal defendants in their state post-conviction proceedings on the Commonwealth's motion to remand would inappropriately result in an accelerated decision on the merits of whether the Criminal Justice Act prohibits Community Defender Organizations from appearing in state court.

Concluding that there is no federal officer or agency obligated to represent or appoint counsel to represent indigent capital state criminal defendants in their state post-conviction proceedings is distinct from resolving the Disqualification Proceeding. That is, I am able to determine that the FCDO fails to establish the "acting under" requirement of the federal officer removal statute without determining that the FCDO should be removed as counsel in the PCRA proceeding. Thus, while I hold that the FCDO has not met its burden to establish federal jurisdiction under § 1442(a)(1), I make no finding that the Criminal Justice Act bars the FCDO from appearing in state court. *See supra* note 5.

## IV. Conclusion

Since the FCDO fails to establish that it is "acting under" a federal officer for purposes of § 1442(a)(1), the Commonwealth's remaining arguments for remand, *i.e.*, the applicability of *Younger* abstention to this proceeding and whether the Disqualification Proceeding is a "civil action" as defined by § 1442(d)(1), need not be addressed. And, as the proceeding will be remanded, the FCDO's motion to dismiss will be denied as moot.

An appropriate order follows.


August 16, 2013                              /s/ A. Richard Caputo
Date                                           A. Richard Caputo
                                               United States District Judge